# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

TRUDY CLARK, *et al.*,

        Plaintiffs,

    v.

BETH ISRAEL DEACONESS MEDICAL
CENTER, *et al.*,

        Defendants.

Case No.: 1:22-CV-10068-DPW

Judge Douglas P. Woodlock

October 17, 2022

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 2

STANDARD OF REVIEW ........................................................................................ 5

ARGUMENT ............................................................................................................ 6

    I.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ............ 6

        A.    The Settlement Class Satisfies Rule 23(a) ...................................... 7

        B.    The Settlement Class Satisfies Rule 23(b)(1) ............................... 12

        C.    Miller Shah and Capozzi Adler Should be Appointed Class Counsel, and
             Bailey Glasser Should be Appointed Local Counsel for the Settlement Class
             ................................................................................................... 13

    II.    THE SETTLEMENT, NOTICE PLAN, AND PLAN OF ALLOCATION
        WARRANT PRELIMINARY APPROVAL ......................................... 13

        A.    The Settlement Should be Preliminarily Approved ................................... 14

        B.    The Notice Plan Should be Preliminarily Approved ............................ 19

        C.    The Plan of Allocation Should be Preliminarily Approved ........................ 20

CONCLUSION ....................................................................................................... 20

CERTIFICATE OF CONFERRAL ........................................................................... 23

Pursuant to Local Rule 7.1(a)(2), I certify that I conferred in good faith with counsel for
Defendants prior to filing this Motion.  Counsel for Defendants stated that Defendants do not
oppose the Motion. ................................................................................................. 23

CERTIFICATE OF SERVICE ................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*aff'd*,
    809 F.3d 78 (1st Cir. 2015) ............................................................................................. 5

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................................ 5, 6, 7, 12

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985) ........................................................................................ 11

*Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
    512 F. Supp. 3d 196 (D. Mass. 2020) ......................................................................... 16

*Bezdek v. Vibram USA Inc.*,
    79 F. Supp. 3d 324 (D. Mass. 2015) ...................................................................... 5, 16

*Blackmon v. Zachry Holdings, Inc.*,
    No. 5:20-cv-00988-ESC (W.D. Tex. Aug. 5, 2022)..................................................... 20

*Boyd v. Coventry Health Care Inc.*,
    299 F.R.D. 451 (D. Md. 2014) ..................................................................................... 16

*Bussie v. Allmerica Fin. Corp.*,
    50 F. Supp. 2d 59 (D. Mass. 1999) .............................................................................. 18

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir.1996) .................................................................................. 6, 14

*Cunningham v. Cornell Univ.*,
    2019 WL 275827 (S.D.N.Y. Jan. 22, 2019)................................................................... 9

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    177 F.R.D. 54 (D. Mass. 1997) ...................................................................................... 7

*Durrett v. Housing Auth. of City of Providence*,
    896 F.2d 600 (1st Cir. 1990); ................................................................................. 5, 14

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ..................................................................................................... 19

*Evans v. Akers*,
    534 F.3d 65 (1st Cir. 2008) .................................................................................... 10, 12

*Garcia-Rubiera v. Calderon*,

570 F.3d 443 (1st Cir. 2009) ............................................................... 7, 8

*Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*,
285 F.R.D. 169 (D. Mass. 2012) ............................................... 8, 11, 13

*Gorsey v. I.M. Simon & Co.*,
121 F.R.D. 135 (D.Mass.1988) ....................................................... 7

*Hochstadt v. Boston Scientific Corp.*,
708 F. Supp. 2d 95 (D. Mass. 2010) ...................................... passim

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ...................................................... 14

*In re Credit Suisse–AOL Sec. Litig.*,
253 F.R.D. 17 (D. Mass. 2008) ............................................... 10, 11

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
275 F.R.D. 382 (D. Mass. 2011) .................................................... 9

*In re Lupron Mktg. and Sales Prac. Litig.*,
345 F. Supp. 2d 135 (D. Mass. 2004) ........................................ 18

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
270 F.R.D. 45 (D. Mass. 2010) .................................................... 17

*In re Nexium (Esomeprazole) Antitrust Litig.*,
296 F.R.D. 47 (D. Mass. 2013) ..................................................... 8

*In re Pharm. Indus. Average Wholesale Price Litig.*,
588 F.3d 24 (1st Cir. 2009) ..................................................... 6, 14

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ................................... 14, 15, 16, 17

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3rd Cir.2009) ...................................................... 12

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. May 31, 2012) ................................. 16

*Jones v. Coca-Cola Consolidated Inc.*,
No. 3:20-cv-00654-FDW-DSC (W.D.N.C. Aug. 2, 2022) ............... 20

*Lapan v. Dick's Sporting Goods, Inc.*,
2015 WL 8664204 (D. Mass. Dec. 11, 2015) ............................... 6

*Mass. Mut. Life Ins. Co. v. Russell*,

473 U.S. 134 (1985) ......................................................................................... 10, 11

*Moreno v. Deutsche Bank Americas Holding Corp.*,
2017 WL 3868803 (S.D.N.Y. Sept. 5, 2017) ................................................... 9

*Mullane v. Central Hanover Bank and Trust Co.*,
339 U.S. 306 (1950) ........................................................................................ 19

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ........................................................................................ 12

*Rolland v. Cellucci*,
191 F.R.D. 3 (D. Mass. 2000). ................................................................... 15, 18

*S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*,
241 F.R.D. 85 (D. Mass. 2007) ........................................................................ 8

*Schlusselberg v. Colonial Mgmt. Assoc., Inc.*,
389 F.Supp. 733 (D. Mass. 1974) ................................................................... 15

*Sesto v. Prospect CharterCARE, LLC*,
2019 WL 2394251 (D.R.I. June 6, 2019) ......................................................... 6

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966) ........................................................................................ 12

*Swack v. Credit Suisse First Bos.*,
230 F.R.D. 250 (D. Mass. 2005) ..................................................................... 10

*Terraza v. Safeway Inc.*,
No. 16-cv-03994-JST (N.D. Cal. Sept. 8, 2020) ............................................ 20

*United States v. Massachusetts*,
869 F. Supp. 2d 189 (D. Mass. 2012) ............................................................... 5

*Voss v. Rolland*,
592 F.3d 342 (1st Cir. 2010) ............................................................................ 5

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 359 (2011) .......................................................................................... 9

**Statutes**

29 U.S.C. § 1001 ..................................................................................................... 1

ERISA § 404 ........................................................................................................... 9

ERISA §§ 409 ......................................................................................................... 9

ERISA § 502(a)(2) .................................................................................................... 7

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... 5, 13

Fed. R. Civ. P. 23(a)…………………………………………………………..5, 7, 8, 12

Fed. R. Civ. P. 23(a)(1) ........................................................................................... 7

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 8

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 10, 12

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 10

Fed. R. Civ. P. 23(b) ............................................................................................ 5

Fed. R. Civ. P. 23(b)(1) ..................................................................................... 7, 12

Fed. R. Civ. P. 23(b)(1)(B) ............................................................................... 12, 13

Fed. R. Civ. P. 23(c)(2) ..................................................................................... 19

Fed. R. Civ. P.23(e) ........................................................................................... 19

Fed. R. Civ. P. 23(e)(2) ..................................................................................... 5

Fed. R. Civ. P. 23(g) ......................................................................................... 13

Fed. R. Civ. P. 23(g)(1)(A)…………………………………………………………13

Plaintiffs,[1] on behalf of the proposed Settlement Class and the Beth Israel Deaconess Medical Center 401(k) Savings and Investment Plan and the Beth Israel Deaconess Medical Center Voluntary 403(b) Plan (collectively, the "Plan"), respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Motion"), requesting the Court issue an Order that: (1) preliminarily approves the Settlement Agreement dated October 17, 2022 with Defendants;[2] (2) preliminarily certifies the proposed Settlement Class; (3) preliminarily approves the proposed notice plan (the "Notice Plan") in the Settlement Agreement and proposed Preliminary Approval Order; and (4) sets a final approval hearing on a date convenient for the Court at least one hundred forty (140) calendar days after the entry of an order preliminarily approving the proposed settlement ("the Settlement").[3]

## **INTRODUCTION**

The Parties have agreed to the Settlement in this representative action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for total relief of $2,900,000.00, as well as certain non-monetary relief, which will provide a substantial recovery to Class Members.   In light of the favorable relief the Settlement provides, as well as the inherent risks and delays of continued litigation, Plaintiffs and Class Counsel submit that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

---

[1] Plaintiffs are Trudy Clark, Donna Nesmith, Jessica Smith, and Shelly Stack, (collectively, "Plaintiffs").  Defendants are Beth Israel Deaconess Medical Center, the Board of Directors of Beth Israel Deaconess Medical Center, and the Pension Committee of Beth Israel Deaconess Medical Center (collectively, "Defendants," and with Plaintiffs, the "Parties").

[2] The Settlement Agreement and exhibits are attached to the Declaration of Alec J. Berin ("Berin Declaration").  Terms not defined herein have the same meaning as in the Settlement Agreement.

[3] A proposed Preliminary Approval Order is attached as Exhibit C to the Settlement Agreement.

Plaintiffs and Class Counsel vigorously pursued relief on behalf of the Plan, and Defense Counsel vigorously defended against the allegations in the Complaint.  The Parties agreed to the Settlement after meaningful motion practice, discovery, and arm's-length negotiations by experienced counsel, including a private mediation with an experienced neutral mediator. Resolving the Class Action at this juncture allows the Parties to avoid continued and costly litigation, which could result in recovery less than that provided by the Settlement, or none at all. As part of the settlement approval process, an independent fiduciary will be engaged on behalf of the Plan to review and authorize the Settlement, which approval will be submitted in a written opinion filed in advance of the fairness hearing.  The anticipated independent fiduciary report will be based on all matter appearing on the record, separate interviews with Plaintiffs' and Defendants' counsel, and independent expert analyses provided by Plaintiffs.  The independent fiduciary report will offer the Court an independent basis to judge the fairness of the Settlement.

All of the prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied.  Thus, Plaintiffs respectfully submit that the Motion should be granted, and notice should be provided to the Settlement Class in accordance with the proposed Notice Plan.

## BACKGROUND

Plaintiffs allege that Defendants are fiduciaries of the Plan and breached duties they owed to the Plan and its participants and beneficiaries under ERISA by: (1) allowing unreasonable recordkeeping and administrative ("RK&A") fees to be charged to participants; and (2) selecting, retaining, and otherwise ratifying high-cost and poorly performing investments instead of offering prudent, readily available alternative investments.  *See* Class Action Complaint ("Complaint"), ECF No. 1, ¶¶ 50–85.  Plaintiffs filed the Complaint on January 18, 2022, and

2

Defendants moved to dismiss the Complaint on May 13, 2022 (ECF Nos. 36, 37). While Defendants' motion to dismiss was pending and during the process of negotiating the Settlement, the parties engaged in initial discovery efforts, including the production and review of documents related to Plan administration and Defendants' alleged conduct. *See* Declaration of Alec J. Berin ("Berin Decl.") ¶ 6. The Parties agreed to participate in a private mediation in an attempt to resolve the litigation, and Defendants moved to stay proceedings pending mediation on July 21 (ECF No. 46). On July 27, 2022, the Court stayed the Class Action through October 25, 2022 (ECF No. 48).

The Parties held a mediation session with Robert A. Myer, Esquire, of JAMS, a well-respected, neutral mediator with experience mediating claims of the kind at issue in the Class Action, on September 1, 2022. Prior to and during the mediation, the Parties exchanged briefs and follow-up information concerning the merits of Plaintiffs' claims, Defendants' defenses, and potential damages, and reached an agreement in principle to resolve the Class Action. The Parties then worked diligently to document the same in the Settlement Agreement.

The Settlement provides that, in exchange for dismissal of the Class Action and a release of claims, Defendants will pay $2,900,000.00 into a Qualified Settlement Fund, to be allocated to Current Participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan pursuant to the Plan of Allocation. *See* Settlement Agreement, §§ 1.37, 4.5–4.6, 5.2–5.4; Berin Decl., Ex. B. In addition, the Settlement provides that Defendants will: (i) initiate a request for proposal for RK&A services obtained by the Plan within three years of the Settlement becoming effective; and (ii) review the investment monitoring and watchlist procedures applicable to the Plan in consultation with the Plan's investment advisor. *See id.*, §§ 14.1–14.2. The Settlement Agreement and the proposed Preliminary Approval Order set forth the Notice Plan and describe

Plaintiffs' anticipated requests for payment of Attorneys' Fees and Costs to Class Counsel and for Case Contribution Awards, all of which are subject to the Court's approval. *See* Settlement Agreement, §§ 1.4, 1.9, 2.2.7, 6.1; Berin Decl., Ex. A. Further, as discussed above, the Settlement Agreement provides for the approval of the Settlement by an Independent Fiduciary. *See* Settlement Agreement, §§ 1.28, 2.1.

The Parties respectfully request that the Court schedule a Fairness Hearing, at or after which the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate, and merits final approval. Plaintiffs propose the following schedule associated with the Notice Plan and Fairness Hearing:

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems necessary, on a date convenient for the Court within 45 days of the Preliminary Approval filing |
| Settlement Administrator to set up settlement website and toll-free number | ¶ 7 | Within 45 days of entry of Preliminary Approval Order |
| Send Settlement Notice and Former Participant Claim Form to Class Members | ¶ 7 | Within 45 days of entry of Preliminary Approval Order |
| Final Approval papers and fee request | ¶¶ 8, 9 | 45 days before Fairness Hearing |
| Independent Fiduciary Report | Settlement Agreement ¶ 2.1.2 | Not later than 30 days before the Fairness Hearing |
| Deadline for filing of objections | ¶ 10 | Not later than 30 days before the Fairness Hearing |
| Deadline for Parties to respond to objections or file any additional papers in support of Settlement | ¶ 11 | Not later than 7 days before Fairness Hearing |
| Fairness Hearing | ¶ 6 | On a date convenient for the Court no sooner than 120 days after entry of the Preliminary Approval Order |

## STANDARD OF REVIEW

When the Court is presented with a proposed settlement in a class action, it must determine whether the proposed settlement class satisfies the Federal Rule of Civil Procedure 23 requirements for class certification. *See Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *see also Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 102 (D. Mass. 2010) (Woodlock, J.) (finding despite "cautionary approach" to class certification, "the law favors class action settlements"). Specifically, a proposed class must meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997); Fed. R. Civ. P. 23.

In granting preliminary approval of a proposed settlement, courts are guided by the Rule 23(e)(2) fairness inquiry, which evaluates the "(1) complexity, expense, and likely duration of litigation, (2) reaction of class to settlement, (3) stage of proceedings and amount of discovery completed, (4) risks of establishing liability, (5) risks of establishing damages, (6) risks of maintaining class action through trial, (7) ability of defendants to withstand greater judgment, (8) range of reasonableness of settlement fund in light of best possible recovery, and (9) range of reasonableness of settlement fund to a possible recovery in light of all the attendant risks of litigation." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343–44 (D. Mass. 2015) (Woodlock, J.), *aff'd*, 809 F.3d 78 (1st Cir. 2015). Before approving a proposed settlement agreement, the Court must determine if the settlement is "fair, reasonable, and adequate; and not illegal, a product of collusion, or against the public interest." *United States v. Massachusetts,* 869 F. Supp. 2d 189 (D. Mass. 2012) (citing *Voss v. Rolland*, 592 F.3d 342, 251 (1st Cir. 2010)) (approving class action settlement because it was fair, reasonable, and adequate). Courts within the First Circuit approach that analysis with the understanding that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be

5

conserved by avoiding formal litigation. *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir.1996).

Importantly, preliminary approval "should not be confused for a final finding or reasonableness or fairness. The first step is merely to ascertain whether notice of the proposed settlement should be sent to the class." *Sesto v. Prospect CharterCARE, LLC*, 2019 WL 2394251, at *1 (D.R.I. June 6, 2019) (internal quotations and citations omitted); *see also Lapan v. Dick's Sporting Goods, Inc.*, 2015 WL 8664204, at *1 (D. Mass. Dec. 11, 2015) (granting preliminary approval of a proposed settlement "within the range of possible settlement approval, such that notice to the Class is appropriate."). Indeed, the threshold requirement to survive the preliminary review stage is merely that a settlement is within the range of reasonableness "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length." *City P'ship Co.*, 100 F.3d at 1043; *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32–33 (1st Cir. 2009).

## ARGUMENT

## I.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

While ERISA representative actions are well suited for class action treatment, it bears noting that, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Hochstadt*, 708 F. Supp. 2d at 102 (quoting *Amchem*, 521 U.S. at 620). Even setting aside the less stringent inquiry relevant here, in recognition of the inherently representative nature of the claims asserted here on behalf of the Plan, this Court has recognized that ERISA § 502(a)(2) claims are precisely the type of cases encompassed by Rule 23(b)(1). *Id.* at 105 (recognizing ERISA § 502(a)(2) actions as "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as

numerous courts have held.") (collecting cases).  Since this action satisfies each of the

prerequisites of Rule 23(a) and is suitable for certification under Rule 23(b)(1), the Court should

preliminarily certify the Settlement Class.

A.    **The Settlement Class Satisfies Rule 23(a)**

The requirements of Rule 23(a) are commonly referred to as numerosity, commonality,

typicality, and adequacy of representation.  *See Amchem*, 521 U.S. at 613.  Plaintiffs and the

proposed Class satisfy each of the Rule 23(a) prerequisites.

i.    **Numerosity**

The numerosity requirement of Rule 23 requires that a putative class must be "so

numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This

requirement does not amount to a showing that it is impossible join all members of the putative

class, but "the class representatives need only show that it is difficult or inconvenient to join all

the members of the class."  *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54 (D.

Mass. 1997) (citing *Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D.Mass.1988)).  In

conducting the impracticability inquiry, the court must consider the difficulty of joining the

parties and ask whether "the damage claims of most individual class members would be

relatively small compared to the cost of litigation, leaving individual class members with little

incentive to litigate their own claims."  *Id.*  While no "minimum number of plaintiffs is required

to maintain a suit as a class action, [] generally if the named plaintiff demonstrates that the

potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Garcia-*

*Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009).

The Plans collectively had over 10,000 participants and beneficiaries at all times during

the Class Period, and the members of the Settlement Class are geographically dispersed.

Membership in the Settlement Class is ascertainable from the records of the Plans maintained by

Defendants and the Plans' recordkeeper.  Accordingly, in light of the size and dispersion of the

Settlement Class, which is far greater than other classes certified in this Circuit, the proposed

Class easily meets Rule 23(a)'s numerosity requirement.  Indeed, joinder would be "difficult,

inconvenient, and costly."  *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47 (D.

Mass. 2013) (certifying a class of 24 to 29 members); *see also Hochstadt*, 708 F. Supp. 2d at 102

(certifying settlement class of over 10,000 retirement plan participants and beneficiaries in

ERISA breach of fiduciary duty action).

> ### ii.    Commonality

The commonality factor requires "questions of law or fact common to the class," Fed. R.

Civ. P. 23(a)(2), and a "common contention" that is "capable of classwide resolution—which

means that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke."  *Garcia-Rubiera*, 570 F.3d at 460 (internal quotations

omitted).  Commonality is a low hurdle, and class members need not present factual or legal

situations that are "precisely identical."  *S. States Police Benevolent Ass'n, Inc. v. First Choice

Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007).   Indeed, "[a]s long as a sufficient

constellation of common issues binds class members together, notwithstanding the existence of

some individualized issues, a class may still be certified."  *Glass Dimensions, Inc. v. State St.

Bank & Tr. Co.*, 285 F.R.D. 169 (D. Mass. 2012) (internal quotations omitted).   "The threshold

of commonality is not a difficult one to meet."  *Hochstadt*, 708 F. Supp. 2d at 102.

Courts in this District have found commonality satisfied for ERISA breach of fiduciary

duty claims brought, as here, on behalf of a plan, because the legal claims are "the same with

respect to every class member."  *Hochstadt*, 708 F. Supp. 2d at 102–04, 106.  Plaintiffs allege

Defendants breached fiduciary duties they owed to the Plan under ERISA § 404 and bring this

Action in a representative capacity under ERISA §§ 409 and 502(a)(2).  Thus, Plaintiffs' Plan-wide claims involve legal and factual questions that inherently affect all participants and beneficiaries in the Plan.  Indeed, "[b]ecause the fiduciary duties are owed to the [Plan] . . . common questions of law and fact are central to the case."  *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *5 (S.D.N.Y. Jan. 22, 2019).

While a single common question is sufficient to meet this standard, *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 359 (2011), the common questions here are numerous  and include: (i) whether Defendants are fiduciaries of the Plan; (ii) whether Defendants breached their fiduciary duties by causing the Plan to (a) maintain imprudent investment options, and (b) incur excessive recordkeeping and administrative fees; (iii) whether the Plan suffered resulting losses; (iv) the proper manner in which to calculate the Plan's losses; and (v) what equitable relief, if any, is appropriate in light of these alleged breaches.  *See Hochstadt*, 708 F. Supp. 2d at 102–03 (finding similar questions sufficient to satisfy commonality in an ERISA action).  As these critical issues involve the acts and omissions of Defendants, they are "common questions of law or fact in the case."  *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382 (D. Mass. 2011).  The evidence required to answer these contentions exists at the Plan-level and, consequently, is common to all Plan participants.  Answers do not depend on the particular circumstances of any individual participant because, in ERISA fiduciary breach actions, "liability is determined based on Defendants', not Plaintiff['s], decisions."  *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *5 (S.D.N.Y. Sept. 5, 2017).  Simply put, the central allegations in the Class Action concern Defendants' administration of the Plan, and because Defendants' duties ran to the Plan, common questions pervade the Action.

       **iii.**       **Typicality**

The typicality prerequisite ensures that representative plaintiffs' claims are typical of those of the class. Fed. R. Civ. P. 23(a)(3). The inquiry requires that "the claims of the class representative and the class overall [] share essential characteristics." *Swack v. Credit Suisse First Bos.,* 230 F.R.D. 250, 260 (D. Mass. 2005). This District has held that a plaintiff's claims are typical when the plaintiff's "injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse–AOL Sec. Litig.,* 253 F.R.D. 17, 23 (D. Mass. 2008).

Courts routinely find claims asserting breaches of fiduciary duty related to the selection and monitoring of retirement plan investments to be typical of all participants in a plan at issue. *See Hochstadt,* 708 F. Supp. 2d at 103. Further, Plaintiffs bring this Class Action in a representative capacity on behalf of the Plan, and any recovery will go to the Plan. *See Evans v. Akers*, 534 F.3d 65, 70 n.4 (1st Cir. 2008) ("those who bring suit do so on behalf of the plan and the plan takes legal title to any recovery") (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141 (1985)). As Plaintiffs allege fiduciary breaches arising out of Defendants' management and administration of the Plan, Plaintiffs' claims are clearly typical of all Class Members.

### iv.    Adequacy

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class." Fed. R. Civ. P. 23(a)(4). This inquiry has two components: "First, there must be an absence of potential conflict between the named plaintiff and the potential class members, and second, the counsel chosen by the class representative must be qualified, experienced, and able to vigorously conduct the proposed litigation." *Glass Dimensions*, 285 F.R.D. at 179 (internal quotations omitted). The First Circuit has noted that the first component ensures named plaintiffs' will does not "conflict with the interests of any of the class members,"

and the second ensures class counsel are "qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *see also In re Credit Suisse*, 253 F.R.D. at 22 (noting that "[t]he requirements of typicality and adequacy tend to merge").

      Plaintiffs' interests are tightly aligned with all other members of the Settlement Class by virtue of the representative nature of Plaintiffs' claims on behalf of the Plan. Plaintiffs seek to enforce the duties Defendants owed to the Plan and to recover damages and equitable relief. *See Mass. Mut. Life Ins. Co.*, 473 U.S. at 142 n.9. Since Plaintiffs are pursuing claims on behalf of the Plan, there are no conflicts between Plaintiffs' individual interests and the interests of the Class. *See Andrews*, 780 F.2d at 130 (finding the adequacy requirement satisfied when "the interests of the representative party will not conflict with the interests of any of the class members"). Indeed, Plaintiffs and Class Members all share the same objectives, factual and legal positions, and interest in establishing Defendants' liability. Moreover, in order to effectuate the Settlement, Plaintiffs are proposing a Plan of Allocation that provides for *pro rata* distribution of the putative common fund to members of the Settlement Class based on their account balances in the Plans. The proposed Plan of Allocation safeguards against the potential of intraclass conflicts (though none exist here). *See Hochstadt*, 708 F. Supp. 2d at 104.

      Finally, a class representative need only possess a basic understanding of the facts underlying the claims in the Class Action and an ability and willingness to participate in the litigation, requirements that Plaintiffs easily exceed. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). Plaintiffs have demonstrated their commitment to pursuing this Class Action on behalf of the Settlement Class and have achieved a very favorable result, which does not favor any member of the Settlement Class at the expense of others. *See* Berin Decl. ¶ 3.

Clearly, Plaintiffs adequately represent all members of the Settlement Class.  Additionally,

Plaintiffs have retained qualified and competent counsel, whose adequacy is discussed in greater

detail below.  *See  Hochstadt*, 708 F. Supp. 2d at 107 (finding class counsel with experience

prosecuting ERISA actions over the last four years to be adequate).

> **B.      The Settlement Class Satisfies Rule 23(b)(1)**

In addition to Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b).  *See*

*Amchem*, 521 U.S. at 613–14.  Courts routinely grant certification under Rule 23(b)(1) in ERISA

fiduciary breach cases.  *See, e.g.*, *Hochstadt*, 708 F. Supp. 2d at 107 ("breach of fiduciary duty

claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for

certification as a Rule 23(b)(1) class, as numerous courts have held.") (citing *In re Schering*

*Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3rd Cir.2009)); *Ortiz v. Fibreboard Corp*., 527

U.S. 815, 833–34 (1999) (calling breach of trust actions a "classic example" of a Rule 23(b)(1)

class).  Because ERISA actions authorize plan-wide relief, there is risk that failure to certify the

class would leave future plaintiffs without relief.  *Evans v. Akers,* No. 04–11380–WGY, slip op.

at 4 (D. Mass. Oct. 7, 2009) (finding class certification appropriate under Rule 23(b)(1)(B)

because "[g]iven the Plan-representative nature of Named Plaintiffs' breach of fiduciary duty

claims, there is a risk that failure to certify the Settlement Class would leave future plaintiffs

without relief.").  Individual adjudication risks contradictory outcomes, and "defendant-

fiduciaries are entitled to consistent rulings regarding operation of the plan." *Id.*  This reasoning

is rooted in the basic concepts of trust law, as a suit alleging a breach of trust by a fiduciary

affecting a large class of beneficiaries and requiring an accounting or similar procedure to restore

the subject of the trust is a classic example of a Rule 23(b)(1)(B) action.  Fed. R. Civ. P. 23

advisory committee's note to 1966 amendment.  Plaintiffs' claims on behalf of the Plan fall

squarely within the Advisory Committee's example, and thus satisfy Rule 23(b)(1).

### C.     Miller Shah and Capozzi Adler Should be Appointed Class Counsel, and Bailey Glasser Should be Appointed Local Counsel for the Settlement Class

In appointing Class Counsel, this Court should consider the Rule 23(g) factors:

> (i) the work counsel has done in identifying or investigating potential claims in this action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  Proposed Class Counsel, Miller Shah LLP ("Miller Shah") and Capozzi Adler, P.C. ("Capozzi Adler" and, with Miller Shah, "Class Counsel"), are exceedingly qualified under these factors.  *See* Berin Decl. ¶¶ 5, 7.  Class Counsel have leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of all Class Members, including by comprehensively investigating the claims forming the basis of the Action, filing detailed pleadings, briefing the motion to dismiss, and reviewing meaningful document productions.  *Id.* ¶¶ 5, 7, 9.  Class Counsel also have extensive experience litigating and overseeing the administration of settlements in ERISA fiduciary breach actions. *See id.* ¶ 5;  *Hochstadt*, 708 F. Supp. 2d at 107 (appointing class counsel experienced with ERISA actions); *Glass Dimensions*, 285 F.R.D. at 179 (explaining that class counsel must be "qualified, experienced, and able to vigorously conduct the proposed litigation.").  Class Counsel will continue to leverage their wealth of relevant experience and resources on behalf of the Settlement Class through final resolution.  Accordingly, the Court should appoint Miller Shah and Capozzi Adler as Class Counsel.[4]

## II.     THE SETTLEMENT, NOTICE PLAN, AND PLAN OF ALLOCATION WARRANT PRELIMINARY APPROVAL

---

[4] Bailey & Glasser LLP ("Bailey Glasser"), which also has significant experience litigating ERISA class actions and has been serving Plaintiffs and the Plan in a local counsel capacity since the inception of the Class Action, should be appointed local counsel for the Settlement Class.

The first step in approving any proposed class action settlement is preliminary approval. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 58 (D. Mass. 2005).  At this stage, the Court reviews the proposed settlement to determine whether it is within the "range of reasonableness," *id.*, and whether, taken as a whole, it is "fair, adequate and reasonable."  *Durrett*, 896 F.2d at 604 (1st Cir. 1990).  The analysis begins with the premise that there is generally a presumption in favor of the settlement if the parties negotiated at arm's-length and were sufficiently informed about the strengths of the claims and defenses, as well as risks of continued litigation.  *See Hochstadt*, 708 F. Supp. 2d at 107 (citing *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d at 32–33); *see also City P'ship Co.*, 100 F.3d at 1043 (noting that "the law favors class action settlements").

### A.     The Settlement Should be Preliminarily Approved

The First Circuit has enumerated various factors for courts to consider when determining whether to preliminarily approve a settlement: "Specifically, the appellate courts consider some or all of the following factors: (1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration."  *In re Relafen*, 231 F.R.D. at 72 (citing *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003)).  The most important factor is the "likelihood of success," or "the strength of the case for the plaintiffs on the merits, balanced against the amount offered in settlement."  *Schlusselberg v. Colonial Mgmt. Assoc., Inc.*, 389 F.Supp. 733, 735 (D. Mass. 1974).  When evaluating this factor, courts are mindful that settlement are born out of compromise.  *See Rolland v. Cellucci*, 191 F.R.D. 3, 15 (D. Mass. 2000).

In evaluating the first factor, the Court should also weigh the considerations listed in the

sixth factor: the potential "risk, complexity, expense and duration" of the litigation. *In re Relafen*, 231 F.R.D. at 72. At the time the Parties agreed to the Settlement, they were engaged in vigorous litigation and further litigation promised to be lengthy and complex, involving numerous competing experts on liability issues concerning Plaintiffs' claims and Defendants' defenses, as well as the Plan's alleged losses. The Parties likely would have filed dispositive motions and pretrial motions, including motions concerning the anticipated expert testimony. Thus, Plaintiffs faced meaningful challenges to their ability to obtain a recovery on behalf of the Plan, which strongly supports preliminary approval of the Settlement. *See Rolland*, 191 F.R.D. at 9 (approving a settlement when it was "somewhat doubtful that Plaintiffs could have obtained relief at trial in the comprehensive and detailed manner with which relief is afforded them in the Settlement Agreement.").

Plaintiffs and Class Counsel have achieved a favorable Settlement, including prospective relief for the Plans to bolster the fiduciaries' investment and service provider monitoring processes, and have relieved the Class of the burdens and risks of further litigation. *See id.* at 10 ("When comparing the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation, there are clearly strong argument for approving a settlement.") (internal quotations and citation omitted). Here, the range of realistic and supportable damages ranged from $5,214,384 to $8,413,941 (depending on the damages methodology employed), Berin Decl. ¶¶ 7–8, and the recovery, therefore, amounts to over 42.5% of the mid-point of potentially recoverable damages in this case—an excellent recovery under the circumstances. *See, e.g.*, *In re Relafen*, 231 F.R.D. at 74 (approving a settlement representing "approximately 26% or 55% of the alleged damages" as calculated by opposing experts); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014)

(approving a $3.6 million settlement of an ERISA class action with plan losses estimated to be between $7.5 million and $111 million); *Hochstadt*, 708 F. Supp. 22d at 109 (approving settlement amounting to 27% of conservatively estimated loss in ERISA class action); *Bezdek*, 79 F. Supp. 3d at 345–46 (approving settlement providing relief amounting to 9% of the alleged price premium measure of damages).[5] The Settlement provides substantial monetary relief, as well as meaningful non-monetary relief related to the ongoing management and administration of the Plan, which this Court has recognized as "a meaningful component of a settlement agreement." *Bezdek*, 79 F. Supp. 3d at 346. Accordingly, the first and sixth factors favors preliminary approval of the Settlement.

The second factor in the preliminary approval inquiry is opposition to the settlement, but as the parties have not yet sent the notice, "the only practical way to ascertain the overall level of

---

[5]Although the parties' Settlement Agreement permits Plaintiffs to seek an award of attorneys' fees of up to 33% of the settlement amount plus expenses, in recognition of the stage of the litigation at which the settlement was reached, Plaintiffs will only seek an award of attorneys' fees and expenses of up to 25% of the settlement amount, inclusive of all expenses, and the proposed notice to the Class reflects this limitation—which is consistent with the benchmark approved by courts in the First Circuit and less than others around the country. *See, e.g.*, *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 220 (D. Mass. 2020) ("Within the First Circuit, courts generally award fees in the range of 20-30%, with 25% as the benchmark.") (citing *Bezdek*, 79 F. Supp. 3d at 349–50); *Boyd*, 299 F.R.D. at 465 ("Fees awarded under the percentage-of-recovery method in settlements under $100 million have ranged from 15% to 40%.") (internal quotations omitted); *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) (granting attorneys' fees of 33.3% and noting that courts "have generally awarded fees in the range of nineteen to forty-five percent."); *Jones v. Coca-Cola Consolidated Inc.*, No. 3:20-cv-00654-FDW-DSC, ECF No. 98 (W.D.N.C. Aug. 2, 2022) (awarding plaintiffs' counsel 33.3% of the common fund in analogous ERISA litigation); *Blackmon v. Zachry Holdings, Inc.*, No. 5:20-cv-00988-ESC, ECF No. 82 (W.D. Tex. Aug. 5, 2022) (same). Likewise, Plaintiffs have limited the amount they will seek as case contribution awards to $7,500 each, which is significantly less than the amounts awarded to class representatives in other cases, in recognition of the stage of the litigation at which the settlement was reached and will fully detail their contributions made on behalf of the Class in support of final approval of the settlement. *See, e.g.*, *In re Relafen*, 231 F.R.D. at 82 (approving incentive awards of $8,000 for individual plaintiffs); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 151 (S.D.N.Y. 2010) (awarding case contribution awards in the amount of $15,000 to each of the three named plaintiffs).

objection to the proposed settlement is for notice to go forward, and to see how many potential class members choose to … object to its terms at the Final Fairness Hearing." *In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*, 270 F.R.D. 45, 63 (D. Mass. 2010).  The Court will have the opportunity to more comprehensively review the reception to the Settlement Class to the Settlement at the Fairness Hearing.

The third factor courts in this Circuit consider is the "stage of the litigation and the amount of discovery completed." *In re Relafen*, 231 F.R.D. at 73.  Although this proposed Settlement Agreement comes at an early stage of the litigation, Class Counsel has extensively developed Plaintiffs' claims on behalf of the Plan and Settlement Class.  *See Hochstadt*, 708 F. Supp. 2d at 107 (explaining that "the applicable standard,[] does not require that discovery be completed, but rather that sufficient discovery be conducted to make an intelligent judgment about settlement.").  Furthermore, "the question is only incidentally answered quantitatively by the number of pages in the documents that were produced or witnesses who were deposed. Rather, the answer must ultimately be a qualitative one: whether the parties conducted sufficient discovery to make an intelligent judgment about settlement." *Id.*

Class Counsel conducted substantial investigation and analysis of Plaintiffs' claims, commencing even before the filing of the initial pleading, and, throughout the course of the litigation and settlement efforts, reviewed and analyzed documents pertaining to the Plans' administration and Defendants' fiduciary process, including, *inter alia*, chartering documents of the fiduciary committee, meeting minutes, materials provided to the committee to support its decision-making, disclosures by service providers, and disclosures made to participants in the Plans.  *See* Berin Decl. ¶¶ 6–7.  Given this information, it is Class Counsel's opinion that the Settlement is fair, reasonable, and adequate to the Settlement Class.  *See Hochstadt*, 708 F. Supp.

2d at 108 (granting preliminary approval to settle a case "at a stage where both the court and counsel are able to evaluate the merits of the claims."). Class Counsel have significant experience litigating ERISA breach of fiduciary duty actions and, although discovery has not been completed, the materials produced by Defendants enabled Class Counsel to meaningfully evaluate the merits of Plaintiffs' claims and assess the risks of continued litigation.

Finally, for the fourth and fifth factors, the opinion of competent counsel and the conduct of negotiations, Courts consider class counsel's background and whether the settlement is the result of "negotiation that occurred at arm[']s[-]length." *In re Lupron Mktg. and Sales Prac. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004). The Settlement is the product of an extensive arm's-length process involving an experienced neutral mediator. Berin Decl. ¶ 6. Further, Class Counsel and Defendants' counsel are experienced in complex ERISA litigation, thoroughly understand the factual and legal issues involved in the Class Action, and believe the Settlement is fair and reasonable. *Id.* ¶ 5. Therefore, the fourth and fifth factors weigh strongly in favor of Settlement approval. *See Rolland*, 191 F.R.D. at 10; *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Hochstadt*, 708 F. Supp. 2d at 107 (granting preliminary approval of a settlement reached through arm's-length negotiations).

In sum, the Settlement is the product of vigorous litigation and arm's-length negotiation by experienced and well-informed counsel, and it provides significant relief to the Settlement Class. Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits preliminary approval.

### B.      The Notice Plan Should be Preliminarily Approved

In addition to the proposed Settlement, the Court should approve the proposed means of notifying Settlement Class members.  Fed. R. Civ. P. 23(c)(2).  Due process and Rule 23(e) do not require that each Class Member receive notice, but rather that class notice be "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950).  "Individual notice must be provided to those class members who are identifiable through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

The Notice Plan is designed to reach as many Settlement Class members as possible.  The Settlement Notice will be sent by e-mail and/or first-class mail to the last known address of each Settlement Class member prior to the Fairness Hearing.  Notably, all Class Members had Plan accounts, so the Plans' recordkeeper has their addresses and other identifying information. Additionally, the Notice, Settlement Agreement, and other litigation documents will be posted on a website, and the Settlement Administrator will establish and monitor a toll-free number for Class Member inquiries.  The Notice will also provide Class Counsels' contact information. Finally, the Notice Plan clearly describes: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the attorneys' fees, litigation expenses, and case contribution award that may be sought; (iv) the procedure and timing for objections; and (v) subject to the Court's schedule, the date and location of the Fairness Hearing.  *See Hochstadt*, 708 F. Supp. 2d at 110 (finding a proposed notice providing "background information on the ERISA Actions, accurately recit[ing] the legal rights and options of the Settlement Class and fully explain[ing] the Revised Plan of Allocation" to be appropriate).  The Notice Plan clearly describes: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released

Claims; (iii) the maximum attorneys' fees, litigation expenses, and case contribution award that may be sought; (iv) the procedure and timing for objections; and (v) subject to the Court's schedule, the date and location of the Fairness Hearing. Accordingly, the Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e).

### C. The Plan of Allocation Should be Preliminarily Approved

The Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata* basis, with no preferential treatment for Plaintiffs or any segment of the Settlement Class. This is substantially similar to plans approved by courts in analogous ERISA litigation. *See, e.g.*, *Blackmon*, No. 5:20-cv-00988-ESC, ECF No. 82; *Coca-Cola Consolidated Inc.*, No. 3:20-cv-00654-FDW-DSC, ECF No. 98; *Terraza v. Safeway Inc.*, No. 16-cv-03994-JST, ECF No. 268 (N.D. Cal. Sept. 8, 2020) ("Settlement Scores will be determined by calculating the Class Member's year-end account balance during the Class Period and dividing that amount by the total sum of year-end asset amounts in the Plan during the Class Period"). The Plan of Allocation is consistent with the obligation of ERISA fiduciaries to treat plan participants alike, and obviates any potential intraclass conflicts. In addition, the Plan of Allocation provides that members of the Settlement Class with active accounts in the Plans will receive the distributions of settlement proceeds to which they are entitled automatically in their accounts in the Plans. In light of its equitable treatment of the Settlement Class, the Court should find that the Plan of Allocation is fair, reasonable, and adequate.

## CONCLUSION

Plaintiffs respectfully submit that this Court should preliminarily approve the Settlement, Notice Plan, and Plan of Allocation, preliminarily certify the Settlement Class, and set a date for a final fairness hearing.

DATED: October 17, 2022      Respectfully submitted,

/s/ Alec J. Berin
James C. Shah
Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
   ajberin@millershah.com

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
   lrubinow@millershah.com

Kolin C. Tang
MILLER SHAH LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

Anna K. D'Agostino
MILLER SHAH LLP
225 Broadway, Suite 1830
New York, NY 10007
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: akdagostino@millershah.com

Mark K. Gyandoh
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax: (717) 233-4103
Email: markg@capozziadler.com

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Tel: (717) 233-4101
Fax: (717) 233-4103
Email: donr@capozziadler.com

John Roddy
Elizabeth Ryan
BAILEY & GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
Tele: (617) 439-6730
Fax: (617) 951-3954
Email: jroddy@baileyglasser.com
        eryan@baileyglasser.com

*Attorneys for Plaintiff, the Plan
and the Proposed Settlement Class*

## <u>CERTIFICATE OF CONFERRAL</u>

Pursuant to Local Rule 7.1(a)(2), I certify that I conferred in good faith with counsel for Defendants prior to filing this Motion.  Counsel for Defendants stated that Defendants do not oppose the Motion.

*/s/* Alec J. Berin

Alec J. Berin

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2022, I caused the foregoing document to be electronically filed with the Clerk of Court, and upon the counsel of record using the CM/ECF system.

/s/ Alec J. Berin
Alec J. Berin