**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

TRUDY CLARK, *et al.*,

               Plaintiffs,

      v.

BETH ISRAEL DEACONESS MEDICAL
CENTER, *et al.*,

               Defendants.

Case No.: 1:22-CV-10068-DJC

Judge Denise J. Casper

August 8, 2023

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
ATTORNEYS' FEES, EXPENSES, AND CASE CONTRIBUTION AWARDS**

---

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

I.    THE SETTLEMENT ..................................................................................................... 2

II.   CLASS NOTICE ........................................................................................................... 4

III.  DISTRIBUTION OF THE SETTLEMENT FUND AND REACTION OF THE SETTLEMENT CLASS ............................................................................................. 5

IV.   EFFORTS OF PLAINTIFFS AND CLASS COUNSEL ............................................. 5

V.    INDEPENDENT FIDUCIARY REVIEW .................................................................... 6

ARGUMENT ............................................................................................................................ 6

I.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE .................. 7

II.   THE SETTLEMENT WARRANTS FINAL APPROVAL ........................................... 7

      A.    The Settlement Should be Approved ................................................................ 8

      B.    The Plan of Allocation Should be Approved .................................................. 12

III.  THE COURT SHOULD AWARD ATTORNEYS' FEES, EXPENSES, AND CASE CONTRIBUTION AWARDS .................................................................................... 13

      A.    Class Counsel's Efforts Warrant an Award of Attorneys' Fees and Expenses from the Common Fund ................................................................................... 13

      B.    The Class Representatives Should be Compensated for Their Efforts ........... 19

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## **Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................... 7

*Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
   512 F. Supp. 3d 196 (D. Mass. 2020) ........................................................ 11

*Bacchi v. Mass. Mut. Life Ins. Co.*,
   2017 WL 5177610 (D. Mass. Nov. 8, 2017) ........................................ 15, 19

*Bezdek v. Vibram USA Inc.*,
   79 F. Supp. 3d 324 (D. Mass. 2015) ................................................. 8, 10, 11

*Blanchard v. Bergeron*,
   489 U.S. 87 (1989) ......................................................................................... 16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................ 14, 15

*Boyd v. Coventry Health Care Inc.*,
   299 F.R.D. 451 (D. Md. 2014) .................................................................... 11

*Bussie v. Allmerica Fin. Corp.*,
   50 F. Supp. 2d 59 (D. Mass. 1999) ............................................................ 13

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
   100 F.3d 1041 (1st Cir.1996) ..................................................................... 8, 9

*Detroit v. Grinell Corp.*,
   495 F.2d  (2d Cir. 1974) ................................................................................ 8

*Durrett v. Housing Auth. of City of Providence*,
   896 F.2d 600 (1st Cir. 1990) ......................................................................... 7

*Goldberger v. Integrated Res.*,
   209 F.3d 43 (2d Cir. 2000) .......................................................................... 16

*Gordan v. Mass. Mutual Life Ins. Co.*,
   2016 WL 11272044 (D. Mass. Nov. 3, 2016) ........................................... 18

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ........................................................................ 16

*Hochstadt v. Boston Scientific Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) .................................................... passim

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) ................................................................................ 8, 9

*In re Lupron Mktg. and Sales Prac. Litig.*,
    345 F. Supp. 2d 135 (D. Mass. 2004) ......................................................................... 13

*In re M3 Power Razor Sys. Mktg. & Sales Practice Litig.*,
    270 F.R.D. 45 (D. Mass. 2010) ................................................................................. 11

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................... 11

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009) ........................................................................................ 9

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
    630 F. Supp. 3d 241 (D. Mass. 2022) .......................................................... 15, 17, 18

*In re Relafen Antitrust Litig.*,
    231 F.R.D. (D. Mass. 2005) ............................................................................... passim

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
    2012 WL 1964451 (D.N.J. May 31, 2012) ................................................................ 11

*In re Solodyn Antitrust Litig.*,
    2018 WL 7075881 (D. Mass. July 18, 2018) ............................................... 14, 17, 19

*In re Synthroid Marketing Litigation*,
    325 F.3d 974 (7th Cir. 2003) ..................................................................................... 19

*In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995) ........................................................................................ 18

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F.Supp.2d 249 (D.N.H. 2007) .............................................................................. 8

*In re Wachovia Corp. ERISA Litig.*,
    2011 WL 5037183 (W.D.N.C. Oct. 24, 2011) ........................................................... 16

*Kelly v. Johns Hopkins Univ.*,
    2020 WL 434473 (D. Md. Jan. 28, 2020) .................................................................. 18

*Krueger v. Ameriprise Fin., Inc.*,
    2015 WL 4246879 (D. Minn. July 13, 2015) ............................................................. 19

*Kruger v. Novant Health, Inc.*,
    2016 WL 6769066 (M.D.N.C. Sep. 29, 2016) ........................................................... 16

*Lipsett v. Blanco*,
    975 F.2d 934 (1st Cir. 1992) ..................................................................................... 19

*New England Carpenters Health Bens. Fund v. First Databank, Inc.*,
  2009 WL 2408560 (D. Mass. Aug. 3, 2009) ............................................................. 19

*Roberts v. TJX Co.*,
  2016 WL 8677312 (D. Mass. Sep. 30, 2016) ............................................................ 19

*Rolland v. Cellucci*,
  191 F.R.D. 3 (D. Mass. 2000) ................................................................. 9, 10, 13

*Schlusselberg v. Colonial Mgmt. Assoc., Inc.*,
  389 F.Supp. 733 (D. Mass. 1974) ............................................................................ 9

*Scovil v. Fedex Ground Package Sys., Inc.*,
  2014 WL 1057079 (D. Me. March 14, 2014) ........................................................... 20

*Skelton v. General Motors*,
  860 F.2d 250 (7th Cir. 1988) ................................................................................... 15

*Tussey v. ABB, Inc.*,
  746 F.3d 327 (8th Cir. 2014) ................................................................................... 19

*United States v. Massachusetts*,
  869 F. Supp. 2d 189 (D. Mass. 2012) ....................................................................... 8

*Voss v. Rolland*,
  592 F.3d  (1st Cir. 2010) .......................................................................................... 8

*Will v. Gen. Dynamics Corp.*,
  2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ........................................................... 19

## Statutes

29 U.S.C. § 1001 .................................................................................................................. 1

## Rules

Fed. R. Civ. P. 23 ......................................................................................................... 7, 14

Fed. R. Civ. P. 23(a) ......................................................................................................... 7

Fed. R. Civ. P. 23(b) ......................................................................................................... 7

Fed. R. Civ. P.. 23(b)(1) ................................................................................................... 7

Fed. R. Civ. P. 23(h) ................................................................................................... 14, 19

## Other Authorities

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure
  (3d ed. 2005) ....................................................................................................... 14

Attorneys' Fees in Class Actions: 2009-2013,
  92 N.Y.U. L. REV. 937 (2017)................................................................................................... 15

Manual for Complex Litigation (Fourth) § 21.71, at 337 (2004) ...................................................... 16

Plaintiffs,[1] on behalf of the proposed Settlement Class and the Beth Israel Deaconess Medical Center 401(k) Savings and Investment Plan and the Beth Israel Deaconess Medical Center Voluntary 403(b) Plan (collectively, the "Plan"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Class Action Settlement and Attorneys' Fees, Expenses, and Case Contribution Awards (the "Motion"), pursuant to the Court's Order Approving Form and Manner of Settlement Notice, Authorizing Notice to the Class and Scheduling Fairness Hearing entered on May 5, 2023 (ECF No. 61, "Order Authorizing Notice").  Plaintiffs respectfully request that the Court issue an Order that: (1) approves the Settlement with Defendants, as memorialized in the Settlement Agreement dated May 4, 2023 and exhibits thereto; (2) maintains certification of the Settlement Class; (3) finds the manner in which the Settlement Class was notified of the Settlement was the best notice practicable under the circumstances, and fair, reasonable, and adequate; (4) approves the Plan of Allocation; and (5) awards attorneys' fees of 25% of the Net Settlement Amount (inclusive of expenses) and $7,500 each to Plaintiffs.

## INTRODUCTION

The Parties have agreed to the Settlement in this representative action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for total relief of $2,900,000.00, as well as certain non-monetary relief aimed at strengthening the fiduciary process by which the Plan is managed and administered in the future, which will provide a substantial recovery to Class Members.  In light of the favorable relief the Settlement provides,

---

[1] Plaintiffs are Trudy Clark, Donna Nesmith, Jessica Smith, and Shelly Stack (collectively, "Plaintiffs").  Defendants are Beth Israel Deaconess Medical Center, the Board of Directors of Beth Israel Deaconess Medical Center, and the Pension Committee of Beth Israel Deaconess Medical Center (collectively, "Defendants," and with Plaintiffs, the "Parties").

as well as the Court's Order Authorizing Notice, Plaintiffs submit the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and request that the Court grant the Motion. The significant efforts of Plaintiffs and Class Counsel in achieving the Settlement recovery warrants the requested awards of attorneys' fees, litigation expenses, and case contribution awards, each of which are well within the range regularly approved by courts in this Circuit.

On May 5, 2023, the Court entered the Order Authorizing Notice, which, among other things, conditionally certified the Settlement Class, found that notice to the Settlement Class was warranted, and set a final approval hearing on September 22, 2023 at 11:00 a.m. *See generally* Order Authorizing Notice, ECF No. 61. The Notice amply describes the terms of the Settlement, nature and history of the litigation, manner in which objections can be lodged, as well as the Plan of Allocation, and anticipated requests for fees, expenses, and compensatory. To date, no objections—to the Settlement or anticipated requests for fees, expenses, and case contribution awards—have been received by Class Counsel or the Settlement Administrator.

Since none of the circumstances warranting preliminary approval have changed, and the reaction of the Settlement Class has been overwhelmingly positive, the Court should grant the Motion in its entirety.

## **BACKGROUND**

### I.    THE SETTLEMENT

Plaintiffs allege that Defendants are fiduciaries of the Plan and breached duties they owed to the Plan and its participants and beneficiaries under ERISA by: (1) allowing unreasonable recordkeeping and administrative ("RK&A") fees to be charged to participants; and (2) failing to appropriately monitor the Plan's investments and, consequently, retaining imprudent investments

instead of readily available alternative investments.  *See* Class Action Complaint ("Complaint"), ECF No. 1, ¶¶ 50–85.  Plaintiffs filed the Complaint on January 18, 2022, and Defendants moved to dismiss the Complaint on May 13, 2022 (ECF Nos. 36, 37).  While Defendants' motion to dismiss was pending and while negotiating the Settlement, the parties engaged in initial discovery, including the production and review of documents related to Plan administration and Defendants' alleged conduct.  *See* Declaration of Alec J. Berin ("Berin Decl.") ¶ 3.  The Parties agreed to participate in a private mediation in an attempt to resolve the litigation, and Defendants moved to stay proceedings pending mediation on July 21 (ECF No. 46).  On July 27, 2022, Judge Woodlock stayed the Class Action through October 25, 2022 (ECF No. 48).

The Parties held a mediation session with Robert A. Myer, Esquire, of JAMS, a well-respected, neutral mediator with experience mediating claims of the kind at issue in the Class Action, on September 1, 2022.  *See* Berin Decl., at ¶ 4.  The Parties exchanged briefs and follow-up information concerning the merits of Plaintiffs' claims, Defendants' defenses, and potential damages, and reached an agreement in principle to resolve the Class Action.  *See id.*  The Parties then worked diligently to document the same in the Settlement Agreement.

The Settlement provides that, in exchange for dismissal of the Class Action and a release of claims, Defendants will pay $2,900,000.00 into a Qualified Settlement Fund, to be allocated to Current Participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan pursuant to the Plan of Allocation.  *See* Settlement Agreement, ECF No. 60-1, §§ 1.37, 4.5–4.6, 5.2–5.4.  In addition, the Settlement provides that Defendants will: (i) initiate a request for proposal for RK&A services obtained by the Plan within three years of the Settlement becoming effective; and (ii) review the investment monitoring and watchlist procedures applicable to the Plan in consultation with the Plan's investment advisor.  *See id.*, §§ 14.1–14.2.  The Settlement

3

Agreement and the proposed Preliminary Approval Order set forth the Notice Plan and describe Plaintiffs' anticipated requests for attorneys' fees, litigation expenses, and case contribution awards, all of which are subject to the Court's approval.  *See id.*, §§ 1.4, 1.9, 2.2.7, 6.1, Ex. A.

## II.    CLASS NOTICE

In accordance with the Order Authorizing Notice, Strategic Claims Services ("SCS") disseminated the Settlement Notice by electronic and/or first-class mail to more than 23,000 members of the Settlement Class and the Former Participant Claim Form to each Class Member without an Active Account by June 16, 2023.  *See* Declaration of Cornelia Vieira Concerning the Mailing of the Settlement Notice and Former Participant Claim Form ("Vieira Declaration"), at ¶¶ 3–5.  The original list was run through the United States Postal Service national change of address service to obtain new address information prior to the initial mailing.  *See id.*  SCS re-mailed any Notices and Former Participant Claim Forms returned as undeliverable for which forwarding addresses were available.  *See id.*, at ¶ 4.  For those returned as undeliverable for which no forwarding addresses were available, SCS utilized Experian "skip tracing" to obtain a new address and re-mailed Notices and Former Participant Claim Forms to each individual for whom an updated address was discovered.  *See id.*, at ¶¶ 8–9.  SCS re-mailed approximately 1,000 Notices and Former Participant Claim Forms that were initially returned as undeliverable. *See id.*, at ¶ 8.  Pursuant to the terms of the Settlement, SCS also established a website for the Settlement, which provides information about the case and relevant deadlines and also makes available pertinent documents, including the following: (i) Notice; (ii) Former Participant Claim Form; (iii) the Preliminary Approval Order; (iv) the Settlement Agreement and exhibits; and (v) the Complaint.  *See id.*, at ¶ 6.  In accordance with the Settlement Agreement and the Preliminary Approval Order, SCS established a toll-free telephone number and email address to which

members of the Settlement Class could direct questions about the Settlement. *See id.*, at ¶ 7.  On August 1, 2023, SCS sent reminder post card by first-class mail and e-mail (when available) to each Former Participant, Beneficiary, and Alternate Payee who do not return the Former Participant Claim Form prior to the deadline for submission of the same. *See id.*, at ¶ 10.

### III.    DISTRIBUTION OF THE SETTLEMENT FUND AND REACTION OF THE SETTLEMENT CLASS

More than 14,000 members of the Settlement Class will automatically receive allocations of Settlement proceeds. *See* Vieira Decl., at ¶¶ 4, 13.  SCS has received more than 1,308 Former Participant Claim Forms to date. *See id.*, at ¶ 13.  The deadline for submitting the Former Participant Claim Form is September 5, 2023. *See id.*  After payments have been issued to Class Members, any amount remaining in the Settlement Fund from uncashed checks after 180 days will be distributed to the Plan to be utilized for the benefit of participants and beneficiaries.

To date, no objections to the Settlement or any of the related applications have been lodged by members of the Settlement Class after effectuation of the Notice Plan. *See* Berin Decl., at ¶ 8; *see also* Vieira Declaration, at ¶ 12.  To further ensure that the Settlement Agreement is fair, reasonable, and adequate, and complies with ERISA's prohibited transaction provisions, the Independent Fiduciary will authorize the Settlement on behalf of the Plan.

### IV.    EFFORTS OF PLAINTIFFS AND CLASS COUNSEL

Plaintiffs had significant involvement in all phases of the litigation, including devoting significant time and effort with Class Counsel to research the facts of the case, review filings, collect documents for anticipated discovery, and regularly confer with Counsel about litigation strategy and the progress of settlement negotiations, culminating with Plaintiffs' authorization of the Settlement. *See* Berin Decl., at ¶ 7.

Counsel and their professionals have spent, in the aggregate, over 1,370 hours in the

prosecution of this case against Defendants, resulting in a lodestar of $656,615.50, with additional anticipated lodestar necessary to complete the representation in this matter. *See* Berin Decl., at ¶ 13. Counsel undertook to represent Plaintiffs and the Class on a contingent basis and advanced necessary litigation expenses without any guarantee of recovery. *See id.*, at ¶¶ 16–17.

## V.    INDEPENDENT FIDUCIARY REVIEW

The Independent Fiduciary's report will be filed on the docket by August 23, 2023, providing the Court another touchstone to assess the fairness of the Settlement and related applications. The Parties are presently cooperating to provide the Independent Fiduciary with sufficient information to enable it to evaluate the Settlement, including all requested public and confidential documents, and separate interviews of the Parties' counsel by the Independent Fiduciary. Further, the Independent Fiduciary will comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003 by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination, for the purpose of Defendants' reliance on PTE 2003-30. The Independent Fiduciary's report will set forth an opinion on the fairness and adequacy of the Settlement, including Plaintiffs' requests for attorneys' fees, expenses, and case contribution awards. The Independent Fiduciary's report will provide a separate basis for the Court to assess the fairness and adequacy of the Settlement, as well as the related fee, expense, and award applications.

## ARGUMENT

## I.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

When the Court is presented with a proposed class action settlement, it must determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. *See Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *see*

*also Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 102 (D. Mass. 2010) (finding

despite "cautionary approach" to class certification, "the law favors class action settlements").

Specifically, a proposed class must meet the four requirements of Rule 23(a) and the

requirements of at least one subsection of Rule 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 613–14 (1997); Fed. R. Civ. P. 23.

      The Order Authorizing Notice provisionally certified the Settlement Class based upon

findings that Rules 23(a) and 23(b)(1) are satisfied.  *See* Order Authorizing Notice, ECF No. 61,

at 2–3.  None of the circumstances that warranted provisional certification have changed.  Thus,

the Settlement Class should be maintained through entry of a final judgment.

## II.     THE SETTLEMENT WARRANTS FINAL APPROVAL

      At this stage, the Court must determine whether the Settlement warrants final approval on

the substance.  Although the First Circuit has not adopted any single list of factors in approving a

settlement, courts in this District often look to the factors articulated by the Second Circuit in

*Detroit v. Grinell Corp.*, 495 F.2d 488, 463 (2d Cir. 1974):

> (1) the complexity, expense, and likely duration of litigation, (2) reaction of class
> to settlement, (3) stage of proceedings and amount of discovery completed, (4) risks
> of establishing liability, (5) risks of establishing damages, (6) risks of maintaining
> class action through trial, (7) ability of defendants to withstand greater judgment,
> (8) range of reasonableness of settlement fund in light of best possible recovery,
> and (9) range of reasonableness of settlement fund to a possible recovery in light of
> all the attendant risks of litigation.

*Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 343–44 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st

Cir. 2015).  Other formulations of the final approval inquiry by courts in the First Circuit

generally represent variations or abbreviations of the *Grinell* analysis.  *See Bezdek*, 79 F. Supp.

3d at 344 (citing *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F.Supp.2d 249, 259 (D.N.H.

2007); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D.

Me. 2003)).  At bottom, these elements "speak to the core question of the reasonableness of the

settlement in light of the uncertainties of litigation." *Id.* at 343; *see also United States v. Massachusetts*, 869 F. Supp. 2d 189 (D. Mass. 2012) (citing *Voss v. Rolland*, 592 F.3d 342, 251 (1st Cir. 2010)) ("Before approving a proposed settlement agreement, the Court must determine if the settlement is "fair, reasonable, and adequate; and not illegal, a product of collusion, or against the public interest.").  Courts within the First Circuit approach that analysis with the understanding that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir.1996).

There is generally a presumption in favor of the settlement if the parties negotiated at arm's-length and were sufficiently informed about the strengths of the claims and defenses, and risks of continued litigation.  *See Hochstadt*, 708 F. Supp. 2d at 107 (citing *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32–33 (1st Cir. 2009)); *see also City P'ship Co.*, 100 F.3d at 1043 ("the law favors class action settlements").

## A.    The Settlement Should be Approved

The most relevant factors to the Court's evaluation of the Settlement are "(1) comparison of the proposed settlement with the likely result of litigation; (2) reaction of the class to the settlement; (3) stage of the litigation and the amount of discovery completed; (4) quality of counsel; (5) conduct of the negotiations; and (6) prospects of the case, including risk, complexity, expense and duration." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005) (citing *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003)).  Perhaps the most important factor is the "likelihood of success," or "the strength of the case for the plaintiffs on the merits, balanced against the amount offered in settlement." *Schlusselberg v. Colonial Mgmt. Assoc., Inc.*, 389 F. Supp. 733, 735 (D. Mass. 1974).  When evaluating this factor, courts are mindful that settlement are born out of

compromise.  *See Rolland v. Cellucci*, 191 F.R.D. 3, 15 (D. Mass. 2000).

In evaluating the first factor, the Court should also weigh the considerations listed in the sixth factor: the potential "risk, complexity, expense and duration" of the litigation.  *In re Relafen*, 231 F.R.D. at 72.  At the time the Parties agreed to the Settlement, they had exchanged discovery materials sufficient to evaluate the strength of the claims and defenses, as well as assess the Plan's alleged losses, and further litigation promised to be lengthy and complex, involving numerous competing experts.  Defendants had already filed one dispositive motion and the Parties likely would have filed motions for summary judgment and other pretrial motions, including motions concerning the anticipated expert testimony.   Thus, Plaintiffs faced meaningful challenges to their ability to obtain a recovery on behalf of the Plan, which strongly supports preliminary approval of the Settlement.  *See Rolland*, 191 F.R.D. at 9 (approving a settlement when it was "somewhat doubtful that Plaintiffs could have obtained relief at trial in the comprehensive and detailed manner with which relief is afforded them" through settlement).

First, Plaintiffs and Class Counsel have achieved a favorable result, including prospective relief for the Plans to bolster the fiduciaries' investment and service provider monitoring processes, and have relieved the Class of the burdens and risks of further litigation.  *See id.* at 10 ("When comparing the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation, there are clearly strong argument for approving a settlement.") (internal quotations and citation omitted).  The range of realistic and supportable damages ranged from $5,214,384 to $8,413,941 (depending on the damages methodology employed), Berin Decl. ¶ 18, and the recovery, therefore, amounts to over 42.5% of the mid-point of potentially recoverable damages in this case—an excellent recovery under the circumstances.  *See*, *e.g.*, *In re Relafen*, 231 F.R.D. at 74 (approving a

settlement representing "approximately 26% or 55% of the alleged damages" as calculated by

opposing experts); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014)

(approving a $3.6 million settlement of an ERISA class action with plan losses estimated to be

between $7.5 million and $111 million); *Hochstadt*, 708 F. Supp. 22d at 109 (approving

settlement amounting to 27% of conservatively estimated loss in ERISA class action); *Bezdek*,

79 F. Supp. 3d at 345–46 (approving settlement providing relief amounting to 9% of the alleged

price premium measure of damages).[2]  The Settlement provides substantial monetary relief, as

well as meaningful non-monetary relief related to the ongoing management and administration of

the Plan, which this Court has recognized as "a meaningful component of a settlement

agreement."  *Bezdek*, 79 F. Supp. 3d at 346.

       Second, the reception of the Settlement Class has been overwhelmingly positive.  As an

---

[2]Although the parties' Settlement Agreement permits Plaintiffs to seek an award of attorneys' fees of up to 33% of the settlement amount plus expenses, in recognition of the stage of the litigation at which the settlement was reached, Plaintiffs will only seek an award of attorneys' fees and expenses of up to 25% of the settlement amount, inclusive of all expenses, and the proposed notice to the Class reflects this limitation—which is consistent with the benchmark approved by courts in the First Circuit and less than others around the country.  *See, e.g.*, *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 220 (D. Mass. 2020) ("Within the First Circuit, courts generally award fees in the range of 20-30%, with 25% as the benchmark.") (citing *Bezdek*, 79 F. Supp. 3d at 349–50); *Boyd*, 299 F.R.D. at 465 ("Fees awarded under the percentage-of-recovery method in settlements under $100 million have ranged from 15% to 40%.") (internal quotations omitted); *In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) (granting attorneys' fees of 33.3% and noting that courts "have generally awarded fees in the range of nineteen to forty-five percent."); *Jones v. Coca-Cola Consolidated Inc.*, No. 3:20-cv-00654-FDW-DSC, ECF No. 98 (W.D.N.C. Aug. 2, 2022) (awarding plaintiffs' counsel 33.3% of the common fund in analogous ERISA litigation); *Blackmon v. Zachry Holdings, Inc.*, No. 5:20-cv-00988-ESC, ECF No. 82 (W.D. Tex. Aug. 5, 2022) (same).  Likewise, Plaintiffs have limited the amount they will seek in case contribution awards to $7,500 each, which is significantly less than the amounts awarded to class representatives in other cases, in recognition of the stage of the litigation at which the settlement was reached and will fully detail their contributions made on behalf of the Class in support of final approval of the settlement.  *See, e.g.*, *In re Relafen*, 231 F.R.D. at 82 (approving incentive awards of $8,000 for individual plaintiffs); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 151 (S.D.N.Y. 2010) (awarding case contribution awards in the amount of $15,000 to each of the three named plaintiffs).

initial matter, the majority of Settlement Class members will receive an allocation of Settlement proceeds automatically in their Plan accounts, and many more have submitted a Former Participant Claim Form.  To date, there have been no objections to any aspect of the Settlement or related applications.  *See id.*  Class Counsel have fielded numerous calls and responded to correspondence from Settlement Class members to provide information regarding the Settlement and claims process, and none have voiced any opposition to the Settlement.  *See* Berin Decl., at ¶ 8.

Third, although the Settlement comes at an early stage of the litigation, Class Counsel has extensively developed Plaintiffs' claims on behalf of the Plan and Settlement Class.  *See Hochstadt*, 708 F. Supp. 2d at 107 (explaining that "the applicable standard,[] does not require that discovery be completed, but rather that sufficient discovery be conducted to make an intelligent judgment about settlement.").  Further, "the question is only incidentally answered quantitatively by the number of pages in the documents that were produced or witnesses who were deposed.  Rather, the answer must ultimately be a qualitative one: whether the parties conducted sufficient discovery to make an intelligent judgment about settlement."  *Id.*  Class Counsel conducted substantial investigation and analysis of Plaintiffs' claims, commencing even before the filing of the initial pleading, and, throughout the course of the litigation and settlement efforts, reviewed and analyzed documents pertaining to the Plans' administration and Defendants' fiduciary process, including, *inter alia*, chartering documents of the fiduciary committee, meeting minutes, materials provided to the committee to support its decision-making, disclosures by service providers, and disclosures made to participants in the Plans.  *See* Berin Decl. ¶ 3.  Given this information, it is Class Counsel's opinion that the Settlement is fair, reasonable, and adequate to the Settlement Class.  *See Hochstadt*, 708 F. Supp. 2d at 108

(granting preliminary approval to settle a case "at a stage where both the court and counsel are able to evaluate the merits of the claims."). Class Counsel have significant experience litigating ERISA breach of fiduciary duty actions and, although discovery has not been completed, the materials produced by Defendants enabled Class Counsel to meaningfully evaluate the merits of Plaintiffs' claims and assess the risks of continued litigation.

Finally, concerning the opinion of competent counsel and the conduct of negotiations, Courts consider class counsel's background and whether the settlement is the result of "negotiation that occurred at arm[']s[-]length." *In re Lupron Mktg. and Sales Prac. Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004). The Settlement is the product of an extensive arm's-length process involving an experienced neutral mediator. *See* Berin Decl. ¶ 4. Class Counsel and Defendants' counsel are experienced in complex ERISA litigation, thoroughly understand the factual and legal issues involved in the Class Action, and believe the Settlement is fair and reasonable. *See id.*, at ¶¶ 5–14. Thus, these factors weigh strongly in favor of Settlement approval. *See Rolland*, 191 F.R.D. at 10; *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Hochstadt*, 708 F. Supp. 2d at 107 (granting preliminary approval of a settlement reached through arm's-length negotiations).

The Settlement is the product of vigorous litigation and arm's-length negotiation by experienced and well-informed counsel, and it provides significant relief to the Settlement Class. The Court should find the Settlement is fair, reasonable, and adequate, warranting approval.

### B.    The Plan of Allocation Should be Approved

The Plan of Allocation provides recovery to members of the Settlement Class on a *pro*

*rata* basis, with no preferential treatment for Plaintiffs or any segment of the Settlement Class. This is substantially similar to plans approved by courts in analogous ERISA litigation. *See, e.g.*, *Blackmon*, No. 5:20-cv-00988-ESC, ECF No. 82; *Coca-Cola Consolidated Inc.*, No. 3:20-cv-00654-FDW-DSC, ECF No. 98; *Terraza v. Safeway Inc.*, No. 16-cv-03994-JST, ECF No. 268 (N.D. Cal. Sept. 8, 2020) ("Settlement Scores will be determined by calculating the Class Member's year-end account balance during the Class Period and dividing that amount by the total sum of year-end asset amounts in the Plan during the Class Period"). The Plan of Allocation is consistent with the obligation of ERISA fiduciaries to treat plan participants alike, and obviates any potential intraclass conflicts. In addition, the Plan of Allocation provides that members of the Settlement Class with active accounts in the Plans will receive the distributions of settlement proceeds to which they are entitled automatically in their accounts in the Plans. In light of its equitable treatment of the Settlement Class, the Court should find that the Plan of Allocation is fair, reasonable, and adequate.

## III.    THE COURT SHOULD AWARD ATTORNEYS' FEES, EXPENSES, AND CASE CONTRIBUTION AWARDS

### A.  Class Counsel's Efforts Warrant an Award of Attorneys' Fees and Expenses from the Common Fund

Federal Rule of Civil Procedure 23 contemplates that, in the process of approving class action settlements, courts may "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In class action litigation, the attorneys who secure a recovery for a class are generally "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney related costs is considered part of the historic

equity power of the federal courts."  7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1803, at 325 (3d ed. 2005).

In common fund settlements, the attorneys' fee award is usually made as a percentage of the fund.  The common fund is "based on the equitable notion that those who have benefited from litigation should share its costs."  *Skelton v. General Motors*, 860 F.2d 250, 252 (7th Cir. 1988).  By awarding fees payable from the common fund, the court spreads litigation costs proportionally among those who will benefit from the Settlement Fund.  *See Boeing*, 444 U.S. at 478.  Plaintiffs' and Class Counsel's efforts here have resulted in a significant common fund recovery for the Class and reflect the private enforcement aims of ERISA.  In light of these substantial efforts, the requested attorneys' fees of 25% of the Settlement Fund (inclusive of expenses, which were reasonable and necessary in achieving the Settlement) are warranted.

Courts in this Circuit often award up to 35% of a common fund as attorneys' fees and recognize that 25% represents an informal benchmark.  *See Bacchi v. Mass. Mut. Life Ins. Co.*, 2017 WL 5177610, at *4 (D. Mass. Nov. 8, 2017) (Casper, J.) (recognizing that, "[a]lthough the First Circuit has not set a presumptive benchmark for percentage of fund awards," such awards commonly range from 20% to 35%); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 630 F. Supp. 3d 241, 245 (D. Mass. 2022) (recognizing 25% as informal benchmark) (collecting cases); *see also* Theodore Eisenberg, Geoffrey P. Miller & Roy Germano, Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. REV. 937, 951 (2017) (Table 3) (finding median fees award in the First Circuit between 2009 and 2013 was 23% and the mean was 26%).

Courts in this District generally consider factors substantially similar to courts in the Second and Third Circuit, including the following:

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections to the settlement terms and/or fees

requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted by counsel; and (7) awards in similar cases.

*In re Solodyn Antitrust Litig.*, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (Casper, J.)

(citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *Goldberger v.*

*Integrated Res.*, 209 F.3d 43 (2d Cir. 2000)).

     *The size of the fund created and the number of persons benefitted.*  The Settlement would provide for the establishment of a common fund totaling $2,900,000.00, which represents over 42.5% of the mid-point of the Plan's potentially recoverable losses.  *See* Berin Decl., at ¶ 18.  As discussed above, this amount compares favorably to recoveries in analogous ERISA class actions and other complex litigation.  When the non-monetary relief provided by the Settlement is accounted for, the value of the recovery is even larger.  Indeed, the Settlement provides for meaningful non-monetary relief aimed at strengthening the fiduciary process employed to manage and administer the Plan in the future.  Where, as here, the settlement includes substantial affirmative relief, such relief must be considered in evaluating the overall benefit to the class. *See* Manual for Complex Litigation (Fourth) § 21.71, at 337 (2004); *cf. Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (cautioning against an "undesirable emphasis" on monetary "damages" that might "shortchange efforts to seek effective injunctive or declaratory relief.").  Thus, courts have "recognize[d] that it is important to take into account affirmative relief in addition to monetary relief so as to encourage attorneys to obtain effective affirmative relief.  In addition, over 60% of Settlement Class members will receive proceeds automatically in their Plan accounts, while the remaining Settlement Class members will need only submit a brief claim form—over 1,300 have done so already, and claims will be accepted until September 5, 2023. Thus, the size of the common fund and Plan of Allocation designed to provide relief to the greatest proportion of Plan participants and beneficiaries feasible, as well as the non-monetary

relief afforded by the Settlement, counsel in favor of the requested fee award.

*The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel.*  To date, there has not been a single objection from a member of the Settlement Class to the Settlement, including the related applications for fees, expenses, and case contribution awards.  *See* Berin Decl., at ¶ 8.  This reception to the Settlement is a further indication of Counsel's skillful and quality representation of Plaintiffs in this litigation, and supports the fee request.  *See In re Ranbaxy*, 630 F. Supp. 3d at 245 (finding lack of objections supports settlement approval).  Moreover, the Independent Fiduciary report to be filed by August 23, 2023 will afford the Court an additional, impartial opinion on behalf of the Plan to support a finding that reaction to the Settlement favors the requested awards.

*The skill and efficiency of the attorneys involved and the risk of non-payment.*  Class Counsel are among the most experienced practitioners in complex ERISA litigation in the country and have leveraged their experience and resources to achieve the excellent result here.  *See* Berin Decl. ¶¶ 5, 14.  Moreover, Class Counsel "bore all of the costs and expenses of bringing this action regarding complex claims against a well-financed and well represented defendant" without any guarantee of recovery.  *Bacchi*, 2017 WL 5177610, at \*4.  Indeed, Class Counsel took this case on a contingent basis and invested significant time, money, and resources to advance the litigation.  In light of the skillful representation rendered and the aforementioned risks, it is appropriate to award 25% of the fund in attorneys' fees.

*The complexity and duration of the litigation.*  In complex ERISA litigation, plaintiffs and counsel face significant challenges in proving liability, loss causation, and damages.  *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at \*4 (M.D.N.C. Sep. 29, 2016) (finding ERISA class action litigation to be inherently complex); *see also In re Wachovia Corp. ERISA*

16

*Litig.*, 2011 WL 5037183, at *4 (W.D.N.C. Oct. 24, 2011) (ERISA is a "rapidly evolving" area of the law with demands that are "complex and require the devotion of significant resources."). This case is no exception.  Further litigation promised to be lengthy and complex, involving numerous competing experts on liability issues concerning Plaintiffs' claims and Defendants' defenses, as well as the Plan's alleged losses.  The Parties likely would have filed dispositive motions (in addition to Defendants' motion to dismiss pending at the time the Parties negotiated the Settlement) and pretrial motions, including motions concerning the anticipated expert testimony.  Therefore, this factor weighs in favor of approval.

*The amount of time devoted to the case by Class Counsel.*  Counsel and their professionals have spent, in the aggregate, over 1,370 hours prosecuting this case and was prepared to spend any time necessary to vigorously and effectively represent the Plan and the Settlement Class.  *See* Berin Decl., at ¶¶ 6, 13.  The time spent by counsel has included the investigation of the underlying claims and preparation of detailed pleadings, comprehensive briefing of a motion to dismiss, negotiation over and review of substantial discovery materials, and preparation for meaningful settlement negotiations, including a mediation that involved the exchange of briefing and additional information regarding liability and damages.  The time spent by counsel was reasonable in relation to the complexity of the case and efforts necessary to achieve a successful resolution.  *See In re Solodyn*, 2018 WL 7075881, at *2.

*The awards in similar cases.*  In complex ERISA class actions, courts routinely award amounts of up to one-third of the settlement recovery.  *See e.g.*, *Gordan v. Mass. Mutual Life Ins. Co.*, 2016 WL 11272044, at *3 (D. Mass. Nov. 3, 2016); *see also Kelly v. Johns Hopkins Univ.*, 2020 WL 434473, *4 (D. Md. Jan. 28, 2020); *Cassell v. Vanderbilt Univ.*, No. 16-2086, Doc. 174 (M.D. Tenn. Oct. 22, 2019) (awarding fee of 33.33% of settlement fund).  Class Counsel's

request of 25% of the common fund—inclusive of litigation expenses—represents a request of less than the benchmark, and substantially less than is customarily awarded in complex ERISA class actions in recognition of the stage at which the resolution was achieved and time spent by counsel in achieving the proposed Settlement.

Although not required, the lodestar cross-check supports the award requested.  *See In re Ranbaxy*, 630 F. Supp. 3d at 247 (quoting *In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)).    A 2003 survey of 1,120 class actions by confirmed that the lodestar multipliers averaged 3.89.  *See* Attorney Awards in Common Fund Cases, 24 CLASS ACTION REP. 4 (2003).  Class Counsel are requesting a small risk premium for their efforts in this contingent fee litigation of less than a ***1.10*** multiplier of their lodestar, even before expenses are considered.  *See* Berin Decl., at ¶ 13.  In fact, when expenses and anticipated additional time spent in connection with settlement administration are accounted for, the requested fees would represent a lodestar multiplied of ***.98***.  The lodestar multiplier implied by the request in this case is well below "the lower end of multipliers reflected in other cases . . . ." *Bacchi*, 2017 WL 5177610, at *5 (finding 1.31 lodestar is low); *see also Gordan*, 2016 WL 11272044, at *3 (approving 3.66 multiplier in a similar ERISA case); *New England Carpenters Health Bens. Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approving 8.3 multiplier); *Roberts v. TJX Co.*, 2016 WL 8677312, at *13 (D. Mass. Sep. 30, 2016) (collecting cases with multiples from 1 to 2); *cf In re Synthroid Marketing Litigation*, 325 F.3d 974, 979–80 (7th Cir. 2003) ("The client cares about the outcome alone" and class counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced.").  "Once established, the lodestar represents a presumptively

reasonable fee . . . ." *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992).[3]  This confirms the reasonableness of the fee request, especially when considered against amounts approved in similarly complex cases.

The Court may also award reasonable litigation expenses.  *See* Fed. R. Civ. P. 23(h). Class Counsel do not seek reimbursement of reasonable and necessary expenses separate from the requested award of 25% of the Settlement Fund.  As is typical in cases such as this, Class Counsel have incurred expenses such as filing fees, fees for experts who have consulted on this litigation, and mediation fees, among others.  In light of the stage of the case at which the Settlement was reached, Class Counsel do not seek an award of litigation expenses separate from the requested award of attorneys' fees.  Rather, Class Counsel include the over $29,900 in costs incurred and additional anticipated expenses associated with administration of the Settlement within the 25% award requested.  Since no objections have been made to the anticipated request for reimbursement of expenses, the decision by Plaintiffs and Class Counsel to include the expenses in the percentage award requested highlights the reasonableness of the request.

## B.  The Class Representatives Should be Compensated for Their Efforts

In their discretion, Courts typically award special compensation to the class

---

[3]Class Counsel's hours are supported by the billing records maintained by each firm and the total hours expended in this litigation are consistent with the approved hours expended in other complex ERISA litigation.  *See* Berin Decl., at ¶ 13.  In addition, Class Counsel's hourly rates used to calculate the lodestar have been recently approved in similar class action litigation.  *See Jones v. Coca-Cola Consolidated Inc.*, No. 3:20-cv-00654-FDW-DSC, ECF No. 98 (W.D.N.C. Aug. 2, 2022); *Blackmon v. Zachry Holdings, Inc.*, No. 5:20-cv-00988-ESC, ECF No. 82 (W.D. Tex. Aug. 5, 2022) (same).  In fact, when viewed as a blended rate, Class Counsel's request amounts to $478.83 per hour.  This is the equivalent of a junior or mid-level associate at a large defense firm and is consistent with rates that have been approved as long as a decade ago.  *See Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *9, 13 (S.D. Ill. Nov. 22, 2010) (blended rate of $514.60 per hour to calculate lodestar in 2010); *Tussey v. ABB, Inc.*, 746 F.3d 327, 340–41 (8th Cir. 2014) (same); *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *8–9 (D. Minn. July 13, 2015) (same).

representatives in recognition of their time and effort.  *See In re Relafen Antitrust Litig.*, 231 F.R.D. at 82.  Plaintiffs seek awards of $7,500 each as case contribution awards.

Plaintiffs' participation was critical to the case's ultimate resolution.  *See In re Solodyn*, 2018 WL 7075881, at *2 (finding "a named plaintiff is an essential ingredient of any class action" and granting request for service awards).  Plaintiffs were engaged in all phases of this complex litigation, including providing substantial information and assisting in the investigation of the Action prior to the filing of the initial pleading, providing documents to Counsel and preparing to answer discovery requests, participating in conference calls with Class Counsel, and reviewing pleadings and other court documents to stay apprised of developments in the litigation and fulfill their duties to the class.  *See* Berin Decl., at ¶ 7.  Plaintiffs also participated in settlement discussions and were in touch with Class Counsel during the mediation.  *See id*. Thus, service awards of $7,500 is warranted in recognition of Plaintiffs' time and efforts on behalf of the Settlement Class.  *See In re Relafen*, 231 F.R.D. at 82 (awarding $8,000 to each named plaintiff); *see also Scovil v. Fedex Ground Package Sys., Inc.*, 2014 WL 1057079, at *7–8 (D. Me. March 14, 2014) (noting a range of incentive awards in other cases and approving incentive awards from $15,000 to $20,000 to the various named plaintiffs).

Further, notice of Plaintiffs' intention to seek the requested case contribution awards was presented to the Settlement class and, to date, no member of the Settlement Class has objected to such awards or the amount, providing more support that the requested awards are reasonable. The Independent Fiduciary's report will also separately evaluate the requested case contribution awards and provide the Court an independent basis to determine reasonableness of such requests.

## **CONCLUSION**

Plaintiffs respectfully submit the Court should grant final approval of the Settlement.

DATED: August 8, 2023                    Respectfully submitted,

                                         /s/ Alec J. Berin
                                         James C. Shah
                                         Alec J. Berin
                                         MILLER SHAH LLP
                                         1845 Walnut Street, Suite 806
                                         Philadelphia, PA 19103
                                         Telephone: (866) 540-5505
                                         Facsimile: (866) 300-7367
                                         Email: jcshah@millershah.com
                                                 ajberin@millershah.com

                                         James E. Miller
                                         Laurie Rubinow
                                         MILLER SHAH LLP
                                         65 Main Street
                                         Chester, CT 06412
                                         Telephone: (866) 540-5505
                                         Facsimile: (866) 300-7367
                                         Email: jemiller@millershah.com
                                                 lrubinow@millershah.com

                                         Kolin C. Tang
                                         MILLER SHAH LLP
                                         201 Filbert Street, Suite 201
                                         San Francisco, CA 94133
                                         Telephone: (866) 540-5505
                                         Facsimile: (866) 300-7367
                                         Email: kctang@millershah.com

                                         Anna K. D'Agostino
                                         MILLER SHAH LLP
                                         225 Broadway, Suite 1830
                                         New York, NY 10007
                                         Telephone: (866) 540-5505
                                         Facsimile: (866) 300-7367
                                         Email: akdagostino@millershah.com

                                         Mark K. Gyandoh
                                         CAPOZZI ADLER, P.C.
                                         312 Old Lancaster Road
                                         Merion Station, PA 19066
                                         Tel: (610) 890-0200
                                         Fax: (717) 233-4103
                                         Email: markg@capozziadler.com

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA 17110
Tel: (717) 233-4101
Fax: (717) 233-4103
Email: donr@capozziadler.com

John Roddy
Elizabeth Ryan
BAILEY & GLASSER LLP
176 Federal Street, 5th Floor
Boston, MA 02110
Tele: (617) 439-6730
Fax: (617) 951-3954
Email: jroddy@baileyglasser.com
        eryan@baileyglasser.com

*Attorneys for Plaintiff, the Plan,*
*and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 8, 2023, I caused the foregoing document to be

electronically filed with the Clerk of Court, and upon the counsel of record using the CM/ECF

system.

*/s/* Alec J. Berin_____

Alec J. Berin
